Manuel Jordán et al., demandantes y recurrentes, *v.* Sindicato Empleados Equipo Pesado, Construcción y Ramas Anexas de Puerto Rico y Puerto Rico American Insurance Company, demandados y recurridos.

Número: R-66-92    Resuelto: 31 de enero de 1968

*Luis A. Negrón López* y *Luis Muñoz Rivera,* abogados de los recurrentes; *Martínez-Muñoz, Agrait-Oliveras & Otero,* abogados de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Ramírez Bages.

—O—

*Luis A. Negrón López* y *Luis Muñoz Rivera,* abogados de los recurrentes; *Martínez-Muñoz, Agrait-Oliveras & Otero,* abogados de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Ramírez Bages.

PER CURIAM: En una acción en reclamación de daños y perjuicios instituida por Manuel Jordán y otros contra el Sindicato Empleados Equipo Pesado, Construcción y Ramas Anexas de Puerto Rico y Puerto Rico American Insurance Company, el Tribunal Superior dictó sentencia declarando sin lugar la demanda luego de formular las siguientes

"Determinaciones de Hechos

1. El día 7 de marzo de 1961, alrededor de las 3:30 de la tarde discurría por la Carretera Núm. 2 Km. 29 Hm. 5 en dirección de Vega Alta, la guaguita Opel licencia núm. 720-521 propiedad del demandante, Manuel Jordán y conducida por éste. Lo acompañaba su esposa, doña Rodesinda Quirós. En la parte de atrás de la guaguita iba su nieta.

2. Al llegar al indicado sitio de la carretera el señor Jordán viró súbitamente hacia la izquierda para dirigirse a un garage que allí había. Esto provocó la súbita detención de un vehículo que avanzaba en dirección contraria para permitirle al señor Jordán cruzar al otro lado.

3. Detrás del vehículo que se detuvo súbitamente venía el vehículo conducido por el demandado Félix Morales, a una velocidad de alrededor de 35 millas por hora. Dicho vehículo era propiedad del Sindicato de Empleados de Equipo Pesado de la Construcción y Ramas Anexas de Puerto Rico y estaba siendo usado en el curso del empleo que con dicho sindicato tenía Félix Morales.

4. El vehículo conducido por el demandado Félix Morales rebasó el vehículo que se detuvo súbitamente y trató de frenar violentamente pero el esfuerzo resultó infructuoso. Esto tuvo

como resultado que el vehículo del demandado Félix Morales que era de marca Chevrolet se estrellara de frente contra la guaguita Opel del demandante señor Jordán.

5. Como consecuencia de dicho choque, doña Rodesinda sufrió lesiones graves que le ocasionaron la muerte. Su esposo, don Manuel Jordán, recibió también lesiones graves pero sobrevivió. También le sobreviven los hijos de los demandantes, Alicia, Felipa y Olga." (Autos originales, páginas 21, 22.)

Señalan los demandantes recurrentes que el tribunal sentenciador incidió (1) al concluir que el demandante Sr. Jordán viró súbitamente hacia la izquierda, sin que la prueba sostenga tal conclusión, (2) al no resolver que la falta de precaución del conductor del vehículo de la demandada fue la causa del accidente, (3) al interpretar la prueba presentada, y (4) al no aplicar a este caso la doctrina de negligencia comparada.

La cuestión a determinar es si las conclusiones de hecho formuladas por el tribunal de instancia son claramente erróneas y que en su consecuencia deba revocarse o modificarse la sentencia del Tribunal Superior.

Consideramos que los errores señalados por los recurrentes no fueron cometidos.

Si bien el recurrente Sr. Jordán y el testigo Nélido Lozada declararon que Jordán iba muy despacio, casi parado cuando invadió el carril de la izquierda para entrar al garage de gasolina, tanto de su prueba como de la prueba de los recurridos, surgen circunstancias que acreditan la corrección de la sentencia dictada por el Tribunal Superior.

El testigo Lozada, quien cuando habló por vez primera con Jordán sobre el accidente manifestó a éste que no lo había presenciado, declaró que Jordán se detuvo como un segundo para invadir el carril izquierdo y que la colisión entre los dos vehículos fue de frente, pegado a la línea blanca que divide la carretera.

684

El propio Jordán declaró que para meterse a la izquierda "Estuve casi detenido, parado bien parado, una distancia más o menos, moviéndome lentamente." Sigue declarando que venía un carro de frente y "paró en seco" y entonces entró en el carril izquierdo. Admite que el choque fue de frente, la carretera era recta, la visibilidad buena y nada había que le impidiera ver los vehículos que se acercaban de Vega Baja. En otra parte de su testimonio dice:

"Yo si vi el carro que me da paso, el que me da entrada. Como de aquí más o menos a la puerta, un poquito más allá de la puerta entonces fue cuando yo hice intención de entrar y entré, cuando de momento otro que sale así como una cosa inesperada.

P.—¿En el momento en que el otro carro le da paso y el choque es casi simultáneo?

R.—Bueno, pudiéramos decirlo así.

P.—¿Su mejor descripción?

R.—Pudiéramos decirlo así."

Declaró también que por una fracción de segundo se dio cuenta de lo que iba a ocurrir cuando vio el otro carro.

"P. A que distancia vio usted por primera vez el otro vehículo que chocó con ustedes?

R. ¿A qué distancia yo vi el otro vehículo? El verlo y tener el impacto fue casi una misma cosa."

Por su parte Morales, conductor del vehículo propiedad de la demandada recurrida declaró que iba por su carril derecho en dirección de Vega Baja a Bayamón a poca velocidad (35 millas por hora había declarado ante el fiscal) cuando el otro carro se le apareció de frente por su carril, aplicó los frenos y despertó cuando le estaban curando la rodilla en Vega Baja.

■ Del conjunto de la evidencia testifical y documental se deduce que este desgraciado accidente ocurrió como consecuencia de la negligencia del conductor Jordán, al invadir el carril izquierdo sin tomar las debidas precauciones para evitar un accidente. El juez sentenciador tuvo base en la prueba para inferir razonablemente que Jordán entró al

carril izquierdo súbitamente, lo que obligó al otro vehículo que discurría en dirección contraria a "parar en seco" produciéndose la colisión con el vehículo conducido por Morales, simultáneamente con la invasión de su carril por el vehículo conducido por Jordán.

*En vista de esta consideración, debe confirmarse la sentencia objeto de revisión.*

—o—

EN MOCIÓN DE RECONSIDERACIÓN

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Ramírez Bages.

San Juan, Puerto Rico, a 30 de abril de 1968

PER CURIAM: Se trata de una reclamación de daños y perjuicios resultantes de una colisión entre un automóvil Opel conducido por el recurrente Manuel Jordán y un vehículo tipo *station wagon*, marca Chevrolet, propiedad del sindicato recurrido, guiado por Félix Morales en gestiones de dicho sindicato, con motivo de la cual perdió la vida la esposa de dicho recurrente y éste sufrió lesiones graves consistentes en múltiples fracturas de los huesos de la nariz inclusive el tabique del cartílago de la misma que requirió una operación plástica y hospitalización durante diez días. Además, sufrió una contusión en el pecho y heridas en la rodilla y espinilla izquierda y en una mano y en los párpados, las que requirieron suturación.

Confirmamos la sentencia del tribunal de instancia desestimando la demanda en este caso en 31 de enero de 1968 porque concluimos que "El juez sentenciador tuvo base en la prueba para inferir razonablemente que Jordán entró al carril izquierdo súbitamente, lo que obligó al otro vehículo que discurría en dirección contraria a 'parar en seco' pro-

duciéndose la colisión con el vehículo conducido por Morales simultáneamente con la invasión de su carril por el vehículo conducido por Jordán."

Los recurrentes han solicitado que reconsideremos nuestra sentencia del 31 de enero de 1968 por la cual confirmamos el fallo recurrido, fundados en que las conclusiones de derecho del juez de instancia son contrarias a sus propias determinaciones de hecho.

Examinado el récord nuevamente encontramos que:

1.—Jordán discurría por la carretera Núm. 2, Km. 29 Hm. 5 en dirección a Vega Alta en su vehículo Opel acompañado de su esposa y de una nieta en la parte de atrás. En ese sitio la carretera es de dos trochas divididas por una línea blanca.

2.—Jordán quiso entrar a un garage a la izquierda en dicho sitio y a esos efectos hizo la señal correspondiente con la mano y procedió lentamente a virar.

3.—Un vehículo que venía en dirección contraria paró "en seco", dice Jordán, para dejarle paso, quedando como a "la distancia de esta sala" (la del tribunal de instancia) del sitio por donde procedía Jordán entrando al carril izquierdo. Necesariamente el haber parado "en seco" no quiere decir que la parada se hizo súbitamente sino más bien que se hizo completa hasta inmovilizar el vehículo, pues de haberse hecho súbitamente dicho vehículo hubiera quedado muy cerca del de Jordán que le cruzaba por el frente y no a una distancia de "la sala del tribunal" que puede ser de 20 a 30 pies.

4.—Félix Morales conducía su vehículo detrás del que paró para dejar paso a Jordán. En lugar de parar como lo hizo el que iba delante, Morales "rebasó" a éste. A esos efectos necesariamente tiene que haber ocupado parte del paseo de la carretera sin detener su velocidad de 35 millas por hora pues dejó huellas de haber patinado al aplicar los frenos en la gravilla saliendo del paseo hacia la carretera

donde chocó de frente con el vehículo de Jordán que venía cruzando el carril izquierdo de la carretera en dicho lugar.

5.—Es obvio que si Morales hubiera estado atento al tráfico necesariamente ha debido notar a tiempo que el vehículo delante del suyo paró para dar paso al de Jordán. Por el contrario vino a notar la situación demasiado tarde y al no reducir la velocidad a tiempo tuvo que desviarse a la derecha, "rebasar" el vehículo parado, y proceder en parte por el paseo de la carretera hasta chocar el vehículo de Jordán.

6.—Al comenzar a doblar, Jordán debió notar que en dirección contraria venían dos autos, que uno paró y el otro no, y, por lo tanto, como él procedía despacio, debió parar para cerciorarse de lo que Morales iba a hacer. Actuó imprudentemente al no darse cuenta de la aproximación del vehículo de Morales hasta que fue demasiado tarde.

7.—La proporción en que la negligencia del recurrente Jordán contribuyó a la ocurrencia del accidente ha sido de un 40%.

8.—Las partes estipularon que los daños morales sufridos por Jordán y sus hijas Alicia, Felipa y Olga Jordán Quirós son los que normalmente sufren un padre y unas hijas en una familia bien avenida cuando ocurre un accidente y una muerte como la ocurrida en este caso.

9.—Los daños sufridos por los recurrentes son los siguientes:

(a) por las lesiones del recurrente Jordán y sus sufrimientos resultantes—$7,500.

(b) Por los sufrimientos morales de Jordán con motivo de la pérdida de su esposa—$20,000.

(c) Por los sufrimientos morales de Alicia, Felipa y Olga Jordán Quirós, por la muerte de su madre—$10,000 cada una.

10.—Debido a que la negligencia de Jordán contribuyó en un 40% a la ocurrencia del accidente, la cuantía de los daños sufridos por Jordán, indicados en el párrafo anterior

deben reducirse a un 60% de la cuantía indicada en los incisos (a) y (b) precedentes. *Flores* v. *F. & J. M. Carrera, Inc.,* 83 D.P.R. 332 (1961).

11.—No se concede cantidad alguna por la pérdida del vehículo de Jordán porque ni se alegó ni se probó su valor al ocurrir el accidente ni el valor residual del mismo después del accidente. Tampoco se alegaron ni probaron los gastos médicos y de hospitalización. No se probó que Armando Santoni, esposo de Olga Jordán Quirós, sufriese daño alguno con motivo del referido accidente.

12.—Debe concederse la suma de $3,000 por concepto de honorarios de abogado.

13.—La responsabilidad de la compañía aseguradora queda limitada al máximo de $20,000 prescrito por su póliza más $3,000 de los honorarios de abogado previamente indicados más las costas correspondientes.

*En vista de lo expuesto, se dejará sin efecto la sentencia dictada en este caso por este Tribunal en 31 de enero de 1968, se revocará la sentencia dictada por el tribunal de instancia, y se dictará otra condenando a las partes a pagar a los recurrentes las cuantías de. daños y honorarios de abogado y costas previamente indicadas.*

El Juez Asociado Señor Pérez Pimentel disintió en voto separado.

—O—

Opinión disidente, en reconsideración, del JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL.

San Juan, Puerto Rico, a 30 de abril de 1968

Disiento por los fundamentos expuestos en la opinión *per curiam* original y por los adicionales que paso a explicar.

El accidente ocurrió casi en el centro de la carretera. Jordán había invadido el carril izquierdo suyo que era por el cual discurría el vehículo conducido por Morales. Jordán

no iba a cruzar perpendicularmente ese carril. Según su propio testimonio iba a seguir hacia adelante por el carril que no le pertenecía para luego entrar a la izquierda donde hay un garage. Jordán declaró que vio venir el vehículo conducido por Morales pero creyó que no iba a seguir por el carril invadido por él. La falta de precaución de Jordán fue crasa. Recuérdese que el impacto entre los dos vehículos ocurre según el propio Jordán, en el mismo momento que él invade el carril izquierdo yendo de Bayamón hacia Vega Alta. El derecho de paso por ese carril era de Morales y no de Jordán. Éste ha cruzado frente a un vehículo que se ha detenido para permitirle invadir el carril izquierdo. Aunque ve el vehículo de Morales, que según las conclusiones del juez sentenciador iba a 35 millas por hora, Jordán no se detiene y entra en el carril opuesto al suyo, o sea, por donde discurría el vehículo de Morales que se dirigía de Vega Alta hacia Bayamón. No hay duda de que cuando Jordán invade el carril izquierdo ya está muy cerca de él el vehículo de Morales, pues el propio Jordán declaró que su entrada a ese carril y la ocurrencia del choque fue una cosa casi simultánea. El impacto de ambos vehículos fue de frente. De suerte que cuando un vehículo se detuvo para darle paso Jordán entró inmediatamente en el carril que no le correspondía para seguir caminando por ese carril en dirección a Vega Baja hasta llegar un poco más adelante donde entraría al garage que está en la izquierda mirando de Bayamón hacia Vega Alta.

Aun si se le quisiera imputar negligencia a Morales por no haber previsto que Jordán iba a invadir su carril a pesar de su proximidad al sitio del accidente, el grado de esa negligencia nunca podría ser mayor que la de Jordán. A mi juicio no podría imputársele a Morales, beneficiando con la mayor liberalidad a Jordán, más de un 25% de negligencia.